UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                     Date: August 10, 2026

Title:     Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING PETITIONER DANIELA MURILLO NARVÁEZ'S (A No. 232-711-125)** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER; ORDERING IMMEDIATE RELEASE (DKT. [2])**

Before the Court is Petitioner Daniela Murillo Narváez's ("Petitioner") *Ex Parte* Application ("Application") seeking a temporary restraining order ("TRO") enjoining Respondents[1] from continuing to detain Petitioner, ordering Petitioner's immediate release from custody under supervision, and enjoining Respondents from transferring Petitioner outside of this Court's jurisdiction. *See* Dkt. # 2 ("*Appl.*"); Dkt. # 2-1 ¶¶ 1–4.  Respondents filed a response, arguing that "Petitioner is properly detained pending [ ] potential bond proceedings," and that "[w]hile Petitioner also seeks immediate release," the Court should, "at most," "order[] a bond hearing to be held before an Immigration Judge under § 1226(a)."  *See* Dkt. # 10  ("*Opp'n*") at 2.

The Court issued a standing order on August 4, 2026, enjoining Petitioner's removal from the District pending further orders from the Court, and setting a briefing schedule on Petitioner's motion.  *See* Dkt. # 7.  For the reasons set forth below, the Court **GRANTS** the motion.

---

[1] The habeas petition lists Respondents as: Fereti Semaia, Warden of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; David J. Venturella, Senior Official Performing the Duties of the Director of ICE; Markwayne Mullin, Secretary of Homeland Security; and Todd Blanche, the Acting Attorney General of the United States.  Dkt. # 1 ¶¶ 13–17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                    Date: August 10, 2026

Title:     Daniella Murillo Narvaez v. Fereti Semaia, *et al.*


I.    Background


Petitioner is thirty (30) years old and a citizen of Colombia.  Decl. of Daniela Murillo Narváez, Dkt. # 2 ("*Narváez Decl.*") ¶ 1.  The Petition details that on March 2, 2023, Petitioner "possessed a United States B-1/B-2 visa and was inspected and admitted as a B-2 visitor."  Dkt. # 1 ("*Pet.*") ¶ 18; *see also Narváez Decl.* ¶ 2.  On June 29, 2023, Petitioner filed Form I-589, and USCIS assigned receipt number MGL2343734499 and A-Number A232-711-125.  *Pet.* ¶ 19; *Narváez Decl.* ¶ 19.  On October 19, 2025, an annual-fee notice reflected that the application remained pending for more than one year.  *Pet.* ¶ 19.  Petitioner did not have an "asylum denial, final removal order, missed USCIS appointment, missed immigration  hearing, or failure to provide a known address."  *Id.* ¶ 21.

In April 2024, Petitioner began employment with Cordiasla USA while living in Spring, Texas, where she was promoted to Distribution Analyst.  *Id.* ¶¶ 22–23; *Narváez Decl.* ¶ 4.  Her employment, wage, immigration, and support records consistently use her true identity.  *Pet.* ¶ 23.  Petitioner has a partner who resides in Riverside, California.  *Pet.* ¶ 24.  Petitioner has "no criminal arrest, charge, or conviction in the United States, Colombia, or any other country."  *Id.* ¶ 26.  "She has no known history of violence, aliases, false claims to citizenship, absconding, or violation of release conditions."  *Id.* ¶ 26; *see also Narváez Decl.* ¶ 5.

Since 2024, Petitioner has been treated with extended-release bupropion for anxiety and depressive illness.  *Pet.* ¶ 32; *Narváez Decl.* ¶ 10.  Petitioner's prior daily dose was 150 milligrams.  *Pet.* ¶ 33; *Narváez Decl.* ¶ 10.  On July 31, 2026, Petitioner's physician adjusted her prescription to 300 milligrams of Wellbutrin XL, one extended-release tablet to be taken daily after breakfast.  *Pet.* ¶ 33; *Narváez Decl.* ¶ 11.  Petitioner's physician warned that she should not stop the medication abruptly because interruption can compromise her mental health "and create a high risk of psychiatric crisis or decompensation."  *Narváez Decl.* ¶ 11; *Pet.* ¶ 34.

On July 28, 2026, Petitioner traveled for work from Houston to Ontario, California.  *Pet.* ¶ 27; *Narváez Decl.* ¶ 6.  Upon landing and departing the Ontario International Airport, immigration agents stopped and detained Petitioner.  *Pet.* ¶ 28; *Narváez Decl.* ¶ 6.  The immigration agents kept the documents she was carrying and then proceeded to process her in San Bernardino before transferring her to the Adelanto Processing Detention Center

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                     Date: August 10, 2026

Title:      Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

("Adelanto").  *Pet.* ¶ 29; *Narváez Decl.* ¶ 7.  "Before the arrest[,] [Petitioner] received no advance notice that ICE intended to detain [her]." *Narváez Decl.* ¶ 8.  ICE agents did not provide Petitioner with "a hearing before a judge or other neutral person where [she] could present [her] immigration, employment, family, and medical evidence." *Id.*  Similarly, ICE agents did not provide Petitioner with any notice identifying "a claimed danger, flight risk, custody violation, or changed circumstance." *Pet.* ¶ 30.  No bond or custody-redetermination request has been made and no bond hearing has occurred.  *Id.* ¶ 31.

While in detention, Petitioner has informed personnel that she takes bupropion every day.  *Pet.* ¶ 35; *Narváez Decl.* ¶ 12.  To date, Petitioner has not received medication while in custody at Adelanto.  *Narváez Decl.* ¶ 12.  Further, detention threatens Petitioner's employment and "makes it harder to communicate privately with counsel and prepare [her] asylum and detention cases." *Narváez Decl.* ¶ 13; *Pet.* ¶ 36.

II.      Legal Standard

A. *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).  "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.  "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                     Date: August 10, 2026

Title:      Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

---

### B. Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders.  Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  In general, the showing required for a TRO and a preliminary injunction are the same.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The applicant for a TRO must show that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024).  "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'"  *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)).  Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge."  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

### III.   Discussion

### A.   *Ex Parte* Application and *Mission Power* Factors

Petitioner has satisfied the *Mission Power* factors.  Petitioner has been in custody for over one week, without receiving any advanced notice that ICE intended on detaining her, a pre-deprivation hearing, an opportunity to contest her detention, or an opportunity to present her immigration and employment status or medical condition.  Petitioner has been unable to receive treatment for her depression and anxiety while in custody.  And Petitioner has also been unable to earn wages at her work for Cordiasla USA as a Distribution Analyst.  Petitioner has had difficulty communicating privately with counsel and preparing her asylum and detention cases.  If the Court heard the motion according to regularly noticed motion procedures, that would leave Petitioner detained for several additional weeks.  Thus, after over one week in continued detention, *ex parte* relief is warranted.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                    Date: August 10, 2026

Title:   Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

 

     B.       Request for Relief from Detention

          *i.*      *Likelihood of Success on the Merits*

Petitioner has demonstrated a likelihood of success on the merits of her request for release from detention.  Petitioner argues that immigration authorities deprived her of the protections that the Due Process Clause of the Constitution requires.  *See Pet.* ¶¶ 37–39.  "Given that due process interests are at stake, we look to the test outlined in" *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160 (9th Cir. 2004).  There, the Supreme Court discussed the need to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner has a liberty interest in being free from detention.  As other courts have identified, a petitioner may have a liberty interest in freedom from detention regardless of whether she was previously in ICE detention.  *See, e.g.*, *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245 DAD SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026) ("Even assuming petitioner was not previously released at the discretion of immigration officials, he has a general liberty interest in freedom from detention."); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).  Petitioner also has an interest in avoiding prolonged detention.  *See Doe v. Becerra*, No. 23-cv-05327-RMI, 2024 WL 1018519, at *5 (N.D. Cal. Mar. 7, 2024) ("As to the first factor, it does not require much to conclude that Petitioner has a compelling interest—to say the least—in avoiding prolonged detention; it is equally evident that the government's interference with that interest necessarily increases while Petitioner spends more and more time in detention."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                 Date: August 10, 2026

Title:      Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

(citation omitted)).  And Petitioner's detention impedes her ability to maintain gainful employment, care and receive necessary medical care.  Accordingly, Petitioner's private interest in remaining free from detention is significant.

As to the second *Mathews* factor, Respondents maintain that "Petitioner appears to be entitled to request and receive an initial bond hearing," and that she is "at most" entitled to a bond hearing before an Immigration Judge under § 1226(a).  *See Opp'n* at 2.  But Respondents ignore Petitioner's account that ICE Officers detained Petitioner as she was exiting the Ontario International Airport, without notice or an opportunity to be heard.  Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Here, ICE Officers detained Petitioner without presenting her with a warrant, or providing her with any type of advanced notice of detention or an opportunity for a bond hearing, or any other type hearing before a neutral adjudicator.  *See Pet.* ¶¶ 30–31; *Narváez Decl.* ¶¶ 8–9.  Accordingly, Petitioner never received notice or an opportunity to challenge her detention or present her immigration status prior to ICE detaining her.  "The absence of pre-deprivation procedures creates a high risk of erroneous liberty deprivation."  *Gomez Romero v. Wamsley*, No. C25-2207-JHC-MLP, 2025 WL 3628633, at *1 (W.D. Wash. Dec. 8, 2025).  For that reason, the second *Mathews* factor counsels in favor of Petitioner's release.

Still, the Court must consider the government's interests.  Though the government has an interest in the steady enforcement of its immigration laws, the government's interest in detaining Petitioner without any procedural protections is slight.  *See Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).  And custody hearings for immigration detention are routine and impose a "minimal" cost on the government.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Thus, the third *Mathews* factor counsels in favor of granting Petitioner's release from detention.

ii.      *Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "Moreover, the Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention,'

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                    Date: August 10, 2026

Title:      Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

including 'subpar medical and psychiatric care in ICE detention facilities.'" *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017)); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025) (finding that petitioner demonstrated irreparable harm, in part, because detention would "pose[] a significant threat to [Petitioner's] health" as petitioner "suffers from several serious medical conditions that would likely be exacerbated by detention."). Petitioner's physician has cautioned her that she "should not stop the medication abruptly," and that doing so creates a high risk of a psychiatric crisis. *See Narváez Decl.* ¶ 11. Yet, while detained, Petitioner has not received such necessary medication. *See id.* ¶¶ 11–12. Moreover, detention threatens Petitioner's continued employment and makes it more difficult for her to communicate privately with counsel. *Id.* ¶ 13. As a result, this factor weighs in favor of granting Petitioner's release from detention.

> ### iii.      *Balance of the Equities and Public Interest*

As detailed above, the last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws. *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Still, the balance of equities and the public interest factors tip in favor of Petitioner because she is challenging Respondents' likely violation of federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Accordingly, and considering the other factors that the Court has already examined, Petitioner is entitled to immediate release from detention.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**              Date: August 10, 2026

Title:      Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

C.      <u>Bond Requirement</u>

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up). "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'" *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering Respondents to follow the governing law, bond is unnecessary. *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law. No bond is required." (footnote omitted)); *Hassanzadeh v. Warden*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *6 (C.D. Cal. Nov. 25, 2025) (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-04377-MWC-PVC **(ADELANTO)**                    Date: August 10, 2026

Title:    Daniella Murillo Narvaez v. Fereti Semaia, *et al.*

IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** the motion (Dkt. # 3) and **ORDERS** as follows:

1.  Respondents must release Petitioner (A No. 232-711-125) immediately under the same terms applicable to her prior to her July 28, 2026, detention.

2.  When releasing Petitioner, Respondents must return any property seized from her in the course of her arrest and detention.

3.  Respondents are enjoined from re-detaining Petitioner without providing notice and a pre-deprivation hearing before a neutral adjudicator.

4.  Respondents are enjoined from transferring Petitioner outside of the Central District of California pending final resolution of her case.

Respondents must file a declaration by 12 p.m. on Tuesday, August 11, 2026, attesting to Petitioner's release.  Respondents are further **ORDERED** to show cause, in writing, no later than seven (7) days after this Order issues as to why a preliminary injunction should not issue.  Petitioner may file a response no later than seven (7) days after Respondents' filing.

**IT IS SO ORDERED.**

                                                                                      :
                                                          **Initials of Preparer**   TJ

---